*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

SCOTT ALLEN MULLINS,

        Defendant-Appellant.

UNPUBLISHED
February 11, 2025
1:12 PM

No. 366603
Hillsdale Circuit Court
LC No. 22-465197-FH

Before: BORRELLO, P.J., and REDFORD and PATEL, JJ.

PER CURIAM.

Following a search of his residence in March 2022, defendant, Scott Allen Mullins, was charged with six counts of drug offenses and three counts of firearm offenses, including that he was running a drug house. Defendant pleaded guilty to one count of possessing methamphetamine with the intent to deliver, MCL 333.7401(2)(b)(*i*), in exchange for the dismissal of the eight other counts and an agreement that his sentence would not be enhanced as a habitual offender and that his sentence would be concurrent with the sentence imposed in a separate file. The trial court accepted defendant's plea and sentenced him to serve 120 to 240 months in prison. Defendant now appeals as on leave granted,[1] and we affirm.

## I. BASIC FACTS

For 13 months, officers from the Region of Irish Hills Narcotics Office (RHINO) investigated defendant for selling narcotics, which led to a search of defendant's property and the discovery of a methamphetamine laboratory and drug house. Defendant was arrested that same day and charged as previously specified. Defendant's girlfriend, Ann Schultz, was charged as a codefendant, pleaded guilty to possessing heroin, and she was sentenced to serve two years of probation. As stated earlier, defendant pleaded guilty to one count of possession with intent to deliver methamphetamine, and the trial court dismissed the other charges.

---

[1] *People v Mullins*, 6 NW3d 63 (Mich, 2024).

After sentencing, defendant moved the trial court for resentencing, arguing that the court erred by finding that defendant was a leader in a multiple-offender situation and assessing 10 points for Offense Variable (OV) 14 on that basis. Additionally, defendant asserted that he received ineffective assistance of counsel because defense counsel failed to object to the erroneous OV 14 score. At the hearing on the motion, defendant argued that, although he originally was charged with nine offenses, he pleaded guilty to only one count of possession with intent to deliver methamphetamine, which was a single-offender offense. And even if the trial court considered all the other charges, defendant did not engage in any behavior to support being classified as a leader. Consequently, he argued OV 14 should have been assigned 0 points, not 10 points.

The prosecutor responded that the trial court could consider the entire criminal transaction and was entitled to review all record evidence. According to the prosecutor, the evidence established that defendant regularly sold methamphetamine, manufactured marijuana oil, and possessed heroin and oxycodone, and that three other people lived with him and purchased drugs from him. Therefore, defendant was a leader in a multiple-offender situation, and OV 14 was correctly scored.

At the outset of the motion hearing, the trial court found that defense counsel was not ineffective for failing to object to the OV 14 score because the score was correct. In finding that the score was correct, the trial court stated that defendant and codefendant Schultz lived together, and "[a]t a minimum, Ms. Schultz helped store the drugs that were sold, knowing why the drugs were there, and again, admittedly possessing them prior to the sale." Accordingly, the trial court found by a preponderance of the evidence that defendant was a leader in a multiple-offender criminal offense and denied defendant's motion. Defendant now appeals.

## II. OV 14 SENTENCING

As he did in the trial court, defendant argues that the court erred by finding that he was a leader in a multiple-offender situation and assessing 10 points for OV 14 on that basis. Alternatively, defendant argues that his plea agreement was not strictly honored when the prosecutor stated at sentencing that "concurrent" sentencing meant that the instant sentence would not exceed the previous sentence. We disagree with both contentions.

## A. STANDARD OF REVIEW

We review for clear error a trial court's findings in support of a particular score under the sentencing guidelines, and the findings must be supported by a preponderance of the evidence. *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013). A trial court's factual determinations are clearly erroneous only if, after reviewing the entire record, we are definitely and firmly convinced that the trial court made a mistake. *People v Armstrong*, 305 Mich App 230, 242; 851 NW2d 856 (2014). "Whether the facts, as found, are adequate to satisfy the scoring conditions prescribed by statute, i.e., the application of the facts to the law, is a question of statutory interpretation, which an appellate court reviews de novo." *Hardy*, 494 Mich at 243.

Defendant's alternative argument regarding his sentencing release date is not preserved because he raises it for the first time on appeal. See *People v Anderson*, 322 Mich App 622, 634;

912 NW2d 607 (2018).[2]  We review unpreserved arguments only for whether there was a plain error that affected the defendant's substantial rights.  See *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999).

## B. ANALYSIS

By its plain language, OV 14 requires that 10 points be assessed when "[t]he offender was a leader in a multiple offender situation."  MCL 777.44(1)(a).  "[T]he plain meaning of 'multiple offender situation' as used in OV 14 is a situation consisting of more than one person violating the law while part of a group."  *People v Dickinson*, 321 Mich App 1, 22; 909 NW2d 24 (2017) (quotation marks and citation omitted).  A defendant may be involved in a multiple-offender situation even when accompanied by only one other person and even when that person is not charged in connection with the crime for which the defendant was convicted.  See *id*.

Regarding who acts as a "leader," "[t]o 'lead' is defined in relevant part as, in general, guiding, preceding, showing the way, directing, or conducting."  *Id*. (quotation marks and citation omitted).  When determining whether a defendant was a leader under OV 14, "a trial court should consider whether the defendant acted first or gave directions or was otherwise a primary causal or coordinating agent."  *Id*. (quotation marks and citation omitted).

Further, MCL 777.44(2)(a) requires the sentencing court to consider "[t]he entire criminal transaction" when assessing points for OV 14.  "Offense variables are properly scored by reference only to the sentencing offense except when the language of a particular offense variable statute specifically provides otherwise."  *People v McGraw*, 484 Mich 120, 135; 771 NW2d 655 (2009).  OV 14 is a particular offense variable for which the language of the statute specifically provides that the "entire criminal transaction should be considered when scoring this variable."  MCL 777.44(2)(a).  Accordingly, for OV 14, "[p]oints must be assessed for conduct extending beyond the sentencing offense."  *McGraw*, 484 Mich at 127.

In this case, a preponderance of the evidence supported that defendant was a leader in a multiple-offender situation, and the trial court correctly assessed 10 points for OV 14.  See *Hardy*, 494 Mich at 438.

First, the evidence supports that defendant's entire criminal transaction was a multiple-offender situation.  To reach this conclusion, the trial court focused on defendant's relationship with his girlfriend and codefendant, Schultz.  The trial court first noted that on the day that RHINO officers searched defendant's property, he lived with Schultz.  The court next read the description of the offense from the presentence investigation report (PSIR), including that officers found large quantities of methamphetamine in the house where defendant and Schultz cohabitated.  Throughout the property, officers also located other drugs, drug paraphernalia, guns, and

---

[2] We likewise note that defendant's argument concerning his sentencing release date is arguably waived on appeal because he failed to include it in his statement of questions presented.  *People v Haynes*, 338 Mich App 392, 435 n 5; 980 NW2d 66 (2021); MCR 7.212(C)(5).  Although we do not generally consider issues that were not properly presented for appeal, we will address this issue for purposes of completeness.

ammunition. Moreover, officers recovered driver's licenses and mail for both defendant and Schultz.

The trial court observed that it was "against that find [sic], when the search warrant was served, that Ms. Schultz claims that she did not know that drugs were being sold out of [defendant's] home." The trial court further noted that Schultz was charged with all the offenses that defendant was charged with, including delivery, and that "[s]he was allowed to plead to possession of drugs because she was using and possessing drugs from the residence, the same drugs that were being sold by [defendant] out of the residence that he owned."

The trial court then found that, "[a]t a minimum, Ms. Schultz helped store the drugs that were sold, knowing why the drugs were there, and again, admittedly possessing them prior to the sale." Accordingly, "[a]t a minimum, it was Ms. Schultz who was part of the group who were violating the law, a multiple offender situation." This finding is supported by a preponderance of the evidence outlined in the PSIR and recited by the trial court. Notably, the trial court did not discuss other evidence from the PSIR related to defendant's criminal enterprise, such as the interviews with the two other people who lived on the property, in which one person admitted to using methamphetamine and the other admitted to purchasing methamphetamine from defendant in defendant's home two days before the search. Instead, the trial court relied on Schultz and her involvement in defendant's dealing of methamphetamine, which was sufficient to find that defendant's offense involved "multiple offenders." See *Dickinson*, 321 Mich App at 22.

In finding that defendant acted as the leader in the multiple-offender situation, the trial court focused on whether defendant "played a precipitating role in a co-offender's participation in the criminal transaction." Against that consideration, the trial court drew reasonable inferences regarding defendant's behavior from the objective evidence that it had discussed and found that defendant did act as a leader. Given that defendant admitted that he had a large quantity of methamphetamine in his house and that he sold it, and Schultz lived in that house and "struggle[d] with the abuse of Methamphetamine," the finding does not create a definite and firm conviction that the trial court made a mistake. See *Armstrong*, 305 Mich App at 242.

Because there was evidence in this case of a multiple-offender situation, i.e., a situation in which both defendant and Schultz, his codefendant, violated the law together, and that between the two, defendant acted as the leader, the trial court did not err by assessing 10 points for OV 14. Relatedly, then, there is no need to correct the PSIR.

Defendant's alternative argument regarding his sentencing release is sparse and does not meet the plain-error standard. See *Carines*, 460 Mich at 763.

The record lacks evidence of exactly what the prosecutor meant when he stated that the sentence in the instant case was "not to exceed the previous sentence." Defendant seems to argue that the prosecutor meant that defendant should not serve a single extra day in prison following his sentencing for the instant offense. However, it is reasonable to infer that the prosecutor meant that the duration of the instant sentence should not exceed the duration of the previous sentence, which is what occurred. Both sentences are 120 to 240 months, notwithstanding that the sentences began running from different dates and were reduced by different amounts of time served in jail.

Accordingly, there was no plain error and resentencing is not warranted on this basis either. See *id*.

## III. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant argues that defense counsel was ineffective for failing to object to the trial court's assessment of OV 14. We disagree.

## A. STANDARD OF REVIEW

Generally, whether a defendant had the effective assistance of counsel is a mixed question of fact and law. *People v Heft*, 299 Mich App 69, 80; 829 NW2d 266 (2012). However, if the trial court did not hold an evidentiary hearing on this issue, then there are no factual findings to which we must defer. *People v Gioglio (On Remand)*, 296 Mich App 12, 20; 815 NW2d 589 (2012), vacated in part and remanded for resentencing 493 Mich 864 (2012). In such cases, we will determine whether the defendant received ineffective assistance on the record alone. *Id*. We review de novo whether a particular act or omission fell below an objective standard of reasonableness under prevailing professional norms and prejudiced the defendant. *Id*. at 19-20.

## B. ANALYSIS

The Constitutions of the United States and Michigan guarantee a defendant the right to the effective assistance of counsel. US Const, Am VI; Const 1963, art 1, § 20. To prove that counsel provided ineffective assistance, a defendant must demonstrate that (1) " 'counsel's representation fell below an objective standard of reasonableness,' " and (2) the defendant was prejudiced, which means "that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.' " *People v Vaughn*, 491 Mich 642, 669; 821 NW2d 288 (2012), quoting *Strickland v Washington*, 466 US 668, 688, 694; 104 S Ct 2052; 80 L Ed 2d 674 (1984). "Effective assistance of counsel is presumed, and the defendant bears a heavy burden of proving otherwise." *People v Eisen*, 296 Mich App 326, 329; 820 NW2d 229 (2012) (quotation marks and citation omitted).

In this case, defendant claims that defense counsel was ineffective for failing to object at sentencing to the trial court's assessment regarding OV 14. In particular, defendant argues that defense counsel failed to understand "basic common law concepts, such as identifying the offense of conviction" and "[r]eigning in the trial court on sentencing considerations." Defendant further asserts that, as a result of these failures, defendant was prejudiced because his sentencing guidelines range included a maximum of 10 additional months. And if defense counsel had objected to the OV 14 score at sentencing, then there was a reasonable probability of a different outcome.

However, as previously discussed, the trial court correctly assessed OV 14 in this case. Moreover, the trial court believed that the scoring was correct, which undercuts defendant's argument that a timely objection to the scoring would have led to a different outcome. At the hearing on defendant's motion for resentencing, the trial court immediately dispensed with defendant's ineffective-assistance-of-counsel claim by stating only, "I do not find that there was ineffective assistance of counsel because I believe the scoring was correct." Therefore, defendant has not articulated a reasonable probability that defense counsel's objection would have changed

the sentencing outcome because the trial court almost certainly would have overruled the objection. "Trial counsel cannot be faulted for failing to raise an objection or motion that would have been futile." *People v Fike*, 228 Mich App 178, 182; 577 NW2d 903 (1998). Consequently, defendant failed to establish that defense counsel's assistance fell below an objective standard of reasonableness. See *Vaughn*, 491 Mich at 669.

Finally, even if the trial court had sustained the objection and assessed 0 points for OV 14, defendant failed to provide any evidence in the record that the trial court would have imposed a lesser sentence. The change would have reduced his sentencing guidelines range from 78 to 130 months to 72 to 120 months. See MCL 777.13m; MCL 777.63. The trial court imposed a minimum sentence of 120 months, which would still be within defendant's proposed lower range. Moreover, the trial court stated at sentencing, "I am going to do the same thing that I did in the other matter, it was 120 to 240 months and so I will . . . run that exactly the same as everyone has agreed." This statement supports that the trial court intended to impose a sentence in this case that matched the duration of the sentence in the other case. Resentencing is not required when "the trial court has clearly indicated that it would have imposed the same sentence regardless of the scoring error and the sentence falls within the appropriate guidelines range." *People v Francisco*, 474 Mich 82, 89 n 8; 711 NW2d 44 (2006). Accordingly, defendant has failed to establish on this record that defendant was prejudiced by defense counsel's failure to object to the OV 14 score at sentencing. Ultimately, then, defendant has not shown that defense counsel provided ineffective assistance.

## IV. CONCLUSION

Defendant has not shown that the trial court erred by assessing 10 points for OV 14 after finding that defendant was a leader in a multiple-offender situation for his role in dealing methamphetamine out of the house that he shared with his codefendant. Relatedly, defendant has not shown that defense counsel provided ineffective assistance by failing to object to OV 14 being assessed 10 points.

Affirmed.

/s/ Stephen L. Borrello
/s/ James Robert Redford
/s/ Sima G. Patel